### UNITED STATES v. JANKE et al.

(District Court, D. North Dakota, W. D. October 20, 1910.)

ALIENS (§ 72*) — NATURALIZATION — OFFENSES — FALSE SWEARING — "KNOWINGLY."

A state court granted naturalization to a woman who had been dead over four years, and the certificate was issued by the clerk. No hearing was had nor evidence taken in open court, as required by Naturalization Act June 29, 1906, c. 3592, § 9, 34 Stat. 599 (U. S. Comp. St. Supp. 1909, p. 482); but affidavits in support of the petition were made out by the clerk, and subscribed and sworn to by defendants, the material statements in which were false. Defendants, however, did not understand the English language, and were not informed of the contents of the affidavits, but signed the same as directed by the clerk. Held, that they were not guilty of "knowingly" giving false testimony, made a crime by section 23 of the act.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 161; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 5, pp. 3937–3939.]

Prosecution by the United States against Gottlieb Janke and Christian Baltzer. On motion for directed verdict at the close of the government's case. Motion granted.

P. H. Rourke, U. S. Atty.
Edward Engerud, for defendants.

AMIDON, District Judge. The indictment in this case charges the defendants with the crime of perjury. They were witnesses in the district court of Logan county in support of the petition of Mathilda Schultz to be admitted as a citizen of the United States, and signed and swore to affidavits embodying facts essential to her admission to citizenship. These affidavits were false. The evidence shows that at the time the proceeding was instituted Mathilda Schultz had been dead for more than four years. Herman Hardt, clerk of the court, was the guardian of her minor child. Previous to her death she had filed upon a government homestead. Hardt became appre-

hensive that the child would lose title to the homestead, because the mother at the time of her death was neither a citizen nor had declared her intention to become such. He therefore determined to carry through the court of which he was clerk a proceeding which should result in a judgment admitting Mathilda Schultz to citizenship, and thus he thought the minor child would be given a status which would entitle him to prove up on the homestead.

This case is a striking illustration of how impossible it is to secure good government even under wise laws, if men who are charged with their administration are false to their trust. In the year 1906 Congress had before it for months the question of the proper regulation of the admission of foreigners to citizenship. The subject had been brought impressively before the country by the discovery that extensive frauds had been committed under the laws then in force. In cases arising at St. Louis (Levin v. U. S., 128 Fed. 826, 63 C. C. A. 476; Dolan v. U. S., 133 Fed. 440, 69 C. C. A. 274) it appeared that corrupt politicians, in order to forward their corrupt purposes, had gathered together mobs of foreigners and brought them to the courthouse, grouped according to their nationality, Huns, Italians, Armenians, and Jews. They were collected in the corridors of the courthouse, and each band placed under the generalship of a policeman, and then marched in blocks before the judges of one of the high courts of that city, and there, under a merely formal ceremony, in which the oath was administered to the entire block, they were admitted as citizens. In some cases the formality of going before the court was omitted, and citizenship papers issued to lists furnished by ward politicians. Upon investigation it was found that many of those people had been in the United States for only a few days. Similar frauds were subsequently discovered in other cities. As the result of these disclosures an extensive inquiry was entered upon by the government, which resulted in the passage of the law under which these defendants are now upon trial. The whole method of admitting aliens to citizenship was changed. The cardinal feature of the proceeding under the present law is that it shall be, as to each person applying to be admitted, a solemn and carefully carried out judicial proceeding. The party applying to be admitted is required to file a petition in writing in court, and to support that petition by the affidavit of at least two witnesses, disclosing that he has resided continuously in the United States at least five years immediately preceding the time of the filing of the petition, and has also resided in the state in which the application is made at least one year. The petition and affidavits must also show that the party is such a person as would be entitled to citizenship. A copy of the petition and of the affidavits supporting it must also be filed in the department at Washington. Then notice is given, as in the case of a judicial proceeding, setting forth that the application has been made, and that the hearing will be had before a court of record at a time specified. Now, what is to be done in court when that proceeding is taken up? Let me read to you the section of the law:

"That every final hearing upon such petition shall be had in open court, before a judge or judges thereof, and every final order which may be made upon such petition shall be under the hand of the court, and entered in full upon a

record kept for that purpose; *and upon such final hearing of such petition the applicant and his witnesses shall be examined under oath before the court and in the presence of the court."* Act June 29, 1906, c. 3592, § 9, 34 Stat. 599 (U. S. Comp. St. Supp. 1909, p. 482).

This law requires that each applicant and his witnesses shall be separately and individually examined under oath like a witness in the trial of a case. Such an examination, if properly carried out, cannot fail to disclose whether or not the applicant is in fact and in truth entitled to citizenship. There can be no longer admission of foreigners to citizenship in the United States in blocks. It is as much an individual proceeding as the trial of any lawsuit is an individual proceeding. The ordinary judicial oath should be administered to the applicant, and to each of his witnesses, and then it is made the duty of the presiding judge, or of some person acting in furtherance of the law, to interrogate each of the witnesses and the applicant, so as to disclose whether the law has in fact been complied with, and whether the applicant is a person entitled to admission to citizenship under the provisions of the law. I am aware that the administration of this law imposes a heavy burden upon courts; but it may be doubted whether courts can devote their time to any higher service than the protection of the roll of citizenship of the republic.

Now, this case discloses that every feature of the law intended to safeguard the citizenship of the republic was outraged in the district court of Logan county in the proceeding that we have had under investigation. It was outraged by the violation of their duty by the clerk of that court and by the judge who presided at the hearing. The practice was substantially the same here as it was in the St. Louis cases. The foreigners were brought before the court in a drove, and simply passed into citizenship without any knowledge on their part of the requirements of the law, or on the part of the court as to whether those requirements had been complied with. These foreigners could not speak English, and did not understand a word of the proceeding. No interpreter was employed; no questions were asked; no examination was had. Simply the oath of allegiance was administered to the whole band in a body. To the aliens the ceremony was an empty form, and to any one having a proper regard for law it was a legal outrage. What is the result? A person who had been dead four years is admitted to citizenship of the United States; and what was the object of this outrage upon federal law and American citizenship? To enable a person who was not entitled to 160 acres of land to get title to it.

As I said at the beginning, gentlemen, this is an impressive illustration of how impossible it is to obtain good government, regardless of how wise our laws may be, if public officials will not be faithful to the performance of their duty under those laws. What, then, are we to do with these defendants? It is made a crime for any person "knowingly" to make a false affidavit in any of these citizenship proceedings. I think the evidence conclusively shows that, owing to the lax and miserable way in which the law was administered in Logan county, these witnesses, being foreigners, knew nothing about

what they were doing. They made the affidavits, and gave color to this judicial proceeding, through a mistake on their part. They acted under the advice of the clerk of court. He prepared a series of affidavits (all except those relating to Mathilda Schultz being for persons entitled to citizenship), and they simply signed where he told them to sign. A younger brother of the dead woman, by the clerk's direction, signed her name to the petition for her admission to citizenship. The clerk falsely certified that she appeared before him and swore to the petition. He, too, was a foreigner, and had little knowledge of the law. The court must bear the chief responsibility for this wrong. It treated a solemn judicial proceeding as an empty ceremony, and we ought not to be surprised that ignorant foreigners accepted the action of the court as a proper interpretation of the law. A proper judicial hearing would have disclosed the error under which these foreigners acted. It is the block system of admitting aliens which is responsible for the wrong. These defendants were simply dumb instruments of that system. They are not guilty of the crime of which they are charged, because they had no guilty knowledge. They ought not to be convicted.

I therefore advise you, gentlemen, that you ought to return a verdict of not guilty.