4 F.(2d)—14

WILLMERING v. UNITED STATES.[*]

(Circuit Court of Appeals, Fifth Circuit. February 10, 1925.)

No. 4260.

1. Criminal law ⊂⊃792(2)—Instruction as to defendant's guilt, if opium involved was possessed and concealed by his companion, held properly denied, unless given in connection with instruction as to his guilt if he aided and abetted.

Where defendant, charged with unlawfully receiving and concealing opium, was arrested while driving on highway with companion in car in which quantity of opium was found concealed, held, court properly refused instruction to acquit if jury believed the opium to have been possessed and concealed by defendant's companion, unless given in connection with instruction as to defendant's guilt if he aided and abetted in view of Criminal Code, § 332, and Rev. St. §§ 5323, 5427 (Comp. St. § 10506).

2. Criminal law ⊂⊃1170½(5)—Forcing of defendant to testify as to intended law violation, other than the offense for which he was being prosecuted, held not reversible error.

Where defendant, charged with unlawfully receiving and concealing opium, over his objection that it would incriminate him, was required to testify that his purpose at particular time was to violate National Prohibition Laws, but further testified that such intent was not carried out, held, he was not prejudiced by such examination so as to constitute a reversible error.

3. Criminal law ⊂⊃671, 1168(2)—Matter, arising on defendant's refusal to testify on ground that it would incriminate him, held such as should have been investigated out of jury's presence, though failure to do so not reversible error.

Matter, arising on defendant's refusal to answer question that it would incriminate him, held such as should have been investigated out of presence of jury, though failure to do so not reversible error where testimony given did not incriminate.

In Error to the District Court of the United States for the El Paso Division of the Western District of Texas; William R. Smith, Judge.

Warren W Willmering was convicted of unlawfully receiving and concealing opium, and he brings error. Affirmed.

Royall G. Smith, of El Paso, Tex. (Moore & Smith and Royall G. Smith, all of El Paso, Tex., on the brief), for plaintiff in error.

H. R. Gamble, Sp. Asst. U. S. Atty., of El Paso, Tex. (John D. Hartman, U. S. Atty., N. J. Morrisson, Asst. U. S. Atty., and H. R. Gamble, Sp. Asst. U. S. Atty., all of El Paso, Tex., on the brief), for defendant in error.

[*] Certiorari denied 45 S. Ct. 508, 69 L. Ed. ——.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. Plaintiff in error was convicted of unlawfully receiving and concealing opium. He prosecutes this writ of error relying for reversal upon two bills of exception: The first, to the refusal of the lower court to grant special instruction No. 1; and, the second, to the court's compelling him to answer a question on cross-examination by government counsel, he contending that to do so would incriminate him in other crimes.

[1] Special charge No. 1 was as follows: "If you believe that the smoking opium charged in the indictment to have been received and concealed by the defendant, W. W. Willmering, was in the possession of and concealed by one Watson, or if you have a reasonable doubt as to whether said Watson or the defendant, if either of them, received and concealed said opium, you should by your verdict find the defendant not guilty."

The lower court refused to give this charge "unless I give the further charge of aiding and abetting each other in it." Counsel for defendant replied, "There is no evidence to show they were," and the court responded that "they were traveling together. I think it is covered by the main charge."

The record shows that defendant was traveling on the highway near El Paso with another in an automobile which was stopped by United States customs officers. He was sitting on the left hand driving the car. Just before it stopped, one of the witnesses saw something thrown out of that side which fell about six or seven feet from the car. It was picked up by one of the officers, but defendant denied having thrown it. A search was made of the car for liquor or other bulky objects and, the engine refusing to work, it was left out on the road until the next day, when the agents returned and made a more thorough investigation. They found in the right-hand pocket another tin of the same kind that was picked up the night before, a match box with some white powder in it, and a hypodermic needle of the kind used by drug addicts. The tin had some of the same black substance in it which the first contained. The contents of both boxes were identified as smoking opium, or what is known as "yen-shing," and the white powder as morphine.

In these circumstances the lower court correctly refused to give the charge without at the same time telling the jury that they might convict defendant as charged, even though the physical act of receiving and concealing the drug was done by the other party; for if defendant was present, driving the car, and thereby knowingly and intentionally aiding in the receiving and concealing of the drug, he was equally guilty. Framed as it was, the charge was calculated to mislead the jury into thinking that unless defendant, himself, actually received and placed the drug in the car, he could not be convicted, which, of course, was not the law. Criminal Code U. S. § 332; R. S. §§ 5323, 5427 (Comp. St. § 10506); Dolan v. United States, 133 F. 440, 69 C. C. A. 274.

[2] In the second bill defendant complains that he was prejudiced by the following circumstance: He had denied any knowledge of the drug, and on cross-examination was asked: "What was your purpose in coming to El Paso on this trip?" To which he replied: "I didn't come here to get any smoking opium or any sort of narcotic, and never had any with me either." Thereupon he was asked: "But for what purpose did you come to El Paso?" This was objected to by his counsel for the reason "that said witness is entitled to claim his privilege against testifying in response to such question for the reason that such answer would tend to incriminate him, and to expose him to several distinct prosecutions of a criminal nature; i. e. violation of the National Prohibition Act, and the United States customs statutes relative to the unlawful importation of intoxicating liquors, conspiracy to violate the National Prohibition Act, conspiracy to violate the United States customs statutes relative to the unlawful importation of intoxicating liquors, and the Prohibition Act of the State of Texas, known as the Dean Law, the answer of said witness having already shown that his purpose in coming to El Paso had no relation or connection whatever with narcotics of any description, nor with the offense for which he stands indicted."

The lower court responded: "I think such privilege can only be claimed by the defendant in person and not by his counsel for him." His counsel then asked: "May we then advise the defendant that he is entitled to claim his privilege?" And the court answered: "You may do so, but the court will, of course, determine whether he may decline to answer."

Court then adjourned until the next day, and when it reconvened the following morning, counsel renewed the objection as follows: "We desire to restate our objection to the question propounded, and the answer sought to be elicited, your honor, as follows:

That the answer of the witness is not admissible for the reason that it tends to connect him, to expose him to prosecution for other distinct, different, and wholly unrelated criminal transactions, in no manner relevant to the charge for which he is being tried, and of the highest possible prejudicial nature toward himself."

The objection was overruled, counsel excepted, and thereupon the following took place:

"The Court: The witness will answer.

"The Witness: I can't answer that, your honor. It will incriminate me, and I claim my privilege under the advice of my attorneys.

"The Court: You will have to answer the question.

"Counsel for Defendant: To which we except.

"The Witness: I came down here for the purpose of violating the Prohibition Law. On my last trip to El Paso, prior to the time I came down here for this trial, I came with Cliff Dietrich, the owner of that Cadillac car. He lives in Sayre, Okl. I got to know him in Amarillo. I came to El Paso about three weeks prior to my arrest on July 30, 1923, with Dietrich. I stopped at the Elks Club; never stayed at the Paso Del Norte Hotel with a man named Sadlo then; that was on a prior trip. This time Cliff Dietrich came with me in a Ford car which belonged to my brother. Dietrich did not stay with me. He was here all the time I was so far as I know, though I don't know were he stopped. He and I did not come down here on a joint enterprise; he knew nothing of it. I had brought that Cadillac down here just back of the 4th of July. I left it here and went back to Amarillo with some people I don't know. I was not making so many trips between Amarillo and El Paso for any special reason. Why, I told you once to violate the Prohibition Law.

"Redirect examination: Yes, when I came down here it was my intention to violate the Prohibition Law; no one else knew about my intention. I did not violate it, however. I just didn't do it; changed my mind. I don't know why I did not; something told me not to do it. I did not violate the Prohibition Law on any of these trips down here from Amarillo. I had no liquor and no connection with any liquor on the night of this transaction.

"Recross-examination: I did not handle any liquor. No, sir; one of these two loads of liquor were not going to me. I had no interest in that; did not have the money to buy it. I know Jack Sharp. I don't know that one of the loads was going to Jack Sharp; don't know anything about it; I did not even know Jack Sharp was out there on the road.

"The Court: If you did not violate the Prohibition Law, why did you claim your privilege of not answering about it, saying that it would incriminate you, if you did answer?

"The Witness: Well, just on the advice from my attorneys.

"The Court: Your attorneys advised you you would incriminate yourself, and yet you had not violated the law at all, is that correct?

"The Witness: Yes, sir."

[3] From the above it will be seen that the answer did not incriminate the defendant, as the intention to violate a law is not a crime unless executed. While we think the court should have investigated the matter out of the presence of the jury, no harm was done because, as indicated, the statement was not incriminating.

For the reasons assigned, the judgment is affirmed.